1  **WO**

2

3

4

5

6                  IN THE UNITED STATES DISTRICT COURT

7                    FOR THE DISTRICT OF ARIZONA

8

9  Fred Bamonte, Javier Cota, Ricardo Perine )    No. CV 06-01860-PHX-NVW
   & other similarly situated employees,     )
10                                            )    **ORDER**
                  Plaintiffs,                 )
11                                            )
   vs.                                        )
12                                            )
                                              )
13 City of Mesa, a body politic,             )
                                              )
14                Defendant.                   )
                                              )
15 _____)

16

17        Pending before the court are Plaintiffs' Motion to Determine that Action Proceed as

18 a Class Action (Doc. # 34) and Defendant's Motion to Dismiss Plaintiffs' State Law Claims

19 (Doc. # 43).

20 **I.    Background**

21        Plaintiffs Fred Bamonte, Javier Cota, and Ricardo Perine are police officers who are

22 required by their employer, Defendant City of Mesa, to wear uniforms and protective gear

23 and equipment for the performance of their job duties.  Plaintiffs filed a notice of claim with

24 Defendant City of Mesa on July 31, 2006, alleging that the City violates the provisions of the

25 Fair Labor Standards Act, 29 U.S.C. § 201 et seq ("FLSA"), and Arizona's wage and hour

26 laws by failing to compensate for the time that Plaintiffs and other similarly situated

27 employees spend donning and doffing their professional attire.  The notice stated as follows:

28

This is a notice of claim letter pursuant to Ariz. Rev. Stat. § 12-821.01. The claimants are effected employees of the City of Mesa. This claim is against the City of Mesa. All acts and/or omissions below described occurred as a result of the acts and/or omissions of the City of Mesa, its employees and its agents.

**FACTS:**

As a practice, police officers and other similarly situated City of Mesa employees are required to maintain, don and doff protective equipment and unique clothing necessary to the performance of their jobs with the City of Mesa. This time is spent outside the employees' regularly scheduled shifts and is not being compensated by the City of Mesa.

Purusant to the doctrine set forth in IBP, Inc. v. Alverez, 126 S. Ct. 514; 163 L. Ed. 2d 288 (2005), the City must compensate for the time spent by its employees maintaining, donning and doffing clothing and equipment unique and necessary to the performance of their duties. Police officers wear both protective equipment (ballistic vests and equipment belts) along with unique clothing (uniforms) that are required and necessary in the performance of the jobs.

Police officers are required to prepare, maintain and don this equipment before reporting for the beginning of their scheduled shifts and are not allowed to doff it until after the conclusion of their scheduled shifts; however, the City does not compensate them for this time. Mesa police officers do not collectively bargain with the City of Mesa and have no agreements with regard to this compensation.

In addition to the above violation of state and federal law, claimants believe other violations are present and result in additional back-pay liability.

**CLAIMS:**

The acts of the City of mesa [sic], its agents and its employees constitute a violation of Section 207 of the Fair Labor Standards Act and Arizona's wage and hour laws in Ariz. Rev. Stat. § 23-392. Additional damages are available pursuant to Ariz. Rev. Stat. § 23-355.

This matter can be settled by payment of twenty million dollars ($20,000,000) plus attorneys fees and costs of this claim as provided in Ariz. Rev. Stat. §§ 12-341, 341.01, 823 and 29 U.S.C. § 216. I hope that we can resolve this matter amicably and quickly.

Doc. # 43, Exh. A.

Echoing the notice of claim, the Second Amended Complaint alleges both that the City of Mesa violates the FLSA by refusing to compensate police officers for the time they

1   spend donning and doffing their uniforms, and that the City willfully violates the FLSA and

2   Arizona Revised Statutes § 23-392 by employing Plaintiffs for work weeks longer than the

3   applicable statutory maximums without compensating them for overtime at permissible rates.

4   The requested remedies include payment of the wrongfully withheld overtime compensation,

5   liquidated damages, and treble damages.

6          Plaintiffs propose the simultaneous use of two separate procedural devices for the

7   adjudication of their federal and state claims.  For the federal claims, Plaintiffs rely on the

8   "collective action" device provided at 29 U.S.C. § 216(b), which permits FLSA plaintiffs to

9   proceed as a class to the extent that they have opted in by means of written consent.

10  Approximately 75 employees have filed their consents under section 216(b).  For the

11  remaining state-law claim, Plaintiffs seek to utilize the "class action" device provided by

12  Federal Rule of Civil Procedure 23.  The proposed class under Rule 23 consists of all

13  overtime-eligible police officers employed by the City of Mesa, or approximately 700

14  individuals.

15         Defendant moves for judgment on the pleadings with regard to the state-law claim for

16  failure to comply with A.R.S. § 12-821.01 and opposes the motion to certify the class of

17  state-law claimants on jurisdictional and procedural grounds.  For the reasons stated below,

18  the motion for judgment on the pleadings will be granted, and the motion for class

19  certification will be denied as moot.

20  **II.     The Court Has Supplemental Jurisdiction Over the Potential State-Law Class
            Action**

21

22         Defendant opposes the motion to certify a class of state-law claimants under Rule 23

23  on two grounds.  First, it contends that the court cannot exercise supplemental jurisdiction

    over the state-law claim because the opt-out format of a Rule 23 class action is fundamentally
24
    at odds with the opt-in requirement for a collective action under 29 U.S.C. § 216(b).  Second,
25
    Defendant argues that even if supplemental jurisdiction may be properly exercised over the
26
    class of state-law claims, Plaintiffs have failed to satisfy the requirements of Rule 23 itself.
27
    The arguments will be addressed in order.
28

Pursuant to 28 U.S.C. § 1367(a), district courts generally have supplemental jurisdiction "over all . . . claims that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." "Nonfederal claims are part of the same 'case' as federal claims when they derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them in one judicial proceeding." *Kuba v. 1-A Agric. Ass'n*, 387 F.3d 850, 855 (9th Cir. 2004).

The extent of the factual nexus between the federal and non-federal claims, however, is not the only relevant issue under 28 U.S.C. § 1367. Even if there is a common nucleus of operative fact, supplemental jurisdiction may not be exercised if a federal statute "expressly provide[s] otherwise." 28 U.S.C. § 1367(a). Additionally, a district court may decline to exercise supplemental jurisdiction over a state-law claim if:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). In applying any of these factors, a case-specific analysis must be undertaken "to determine whether declining supplemental jurisdiction comports with the underlying objective of most sensibly accommodating the values of economy, convenience, fairness and comity." *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004) (internal quotation marks omitted).

Plaintiffs' state-law claim shares a common nucleus of operative fact with the claims raised under the FLSA. The alleged violations of the overtime pay provisions of A.R.S. § 23-392 and the FLSA are based on the same conduct of Defendant with regard to the same employees over the same period of time. The language of 29 U.S.C. § 216(b), moreover, does not "expressly" prohibit federal jurisdiction over Plaintiffs' claim under Arizona law.

1  *See Lindsay v. Gov't Employees Ins. Co.*, 448 F.3d 416, 422 (D.C. Cir. 2006).  Supplemental

2  jurisdiction is therefore justified insofar as these issues are concerned.  Defendant appears

3  to concede as much.

4         Jurisdiction, moreover, will not be declined under sections 1367(c)(1)-(3).  Plaintiffs'

5  action under A.R.S. § 23-392 involves a standard claim for overtime pay that does not raise

6  a novel or complex issue of Arizona law, and the federal claims on which original

7  jurisdiction rests have not been dismissed.  Nor will the state-law claim "substantially

8  predominate" over the FLSA claims "in terms of proof, . . . the scope of the issues raised, or

9  . . . the comprehensiveness of the remedy sought."  *United Mine Workers v. Gibbs*, 383 U.S.

10  715, 726-27 (1966).  While Plaintiffs seek treble damages exclusively in connection with

11  their claim under A.R.S. § 23-392, and while the class action on the state-law claim would

12  involve approximately ten times as many plaintiffs as the FLSA claims, the substance and

13  basis of the claims is virtually indistinguishable.  Judicial economy weighs against bifurcated

14  state and federal proceedings in these circumstances.  *Cf. Lindsay*, 448 F.3d at 425

15  (explaining that "[p]redomination under section 1367(c)(2) relates to the type of claim" and

16  that a state-law claim for overtime pay did not predominate over an FLSA claim that it

17  "essentially replicate[d]").

18         The closest question is whether supplemental jurisdiction should nevertheless be

19  declined under section 1367(c)(4) due to the incongruity between the procedural devices

20  established by Rule 23 and 29 U.S.C. § 216(b).  The former includes within a successfully

21  certified class all proposed members by default and provides that a class member must

22  expressly opt out of the class in order not to participate in the underlying action.  Fed. R. Civ.

23  P. 23(c)(2).  The latter establishes that an FLSA action for overtime pay can be maintained

24  by "one or more employees for and in behalf of himself or themselves and other employees

25  similarly situated," but also provides that "[n]o employee shall be a party plaintiff to any

26  such action unless he gives his consent in writing to become such a party and such consent

27  is filed in the court in which such action is brought."  29 U.S.C. § 216(b).  Congress created

28  the opt-in requirement of section 216(b) "for the purpose of limiting private FLSA plaintiffs

to employees who asserted claims in their own right and freeing employers from the burden of representative actions." *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 173 (1989). Because of their respective opt-out and opt-in frameworks, Rule 23 and section 216(b) have been characterized as "mutually exclusive and irreconcilable." *Jackson v. City of San Antonio*, 220 F.R.D. 55, 58 (W.D. Tex. 2003).

Numerous cases have addressed the effect of this tension on supplemental jurisdiction, but their resolutions are split, and no authority from the Ninth Circuit is directly on point. Some FLSA cases have declined supplemental jurisdiction over Rule 23 class actions involving exclusively state-law claims on the view that the exercise of such jurisdiction would subvert congressional intent with respect to 29 U.S.C. § 216(b) by utilizing the very provision that Congress created to preclude opt-out class actions under the FLSA as the original jurisdictional predicate to supplemental jurisdiction over an opt-out class action. *See, e.g.*, *Otto v. Pocono Health Sys.*, 457 F. Supp. 2d 522 (M.D. Pa. 2006); *Moeck v. Gray Supply Corp.*, 2006 WL 42368 (D.N.J. Jan. 6, 2006); *McClain v. Leona's Pizzeria, Inc.*, 222 F.R.D. 574 (N.D. Ill. 2004); *Hatfield v. Oak Hill Banks*, 115 F. Supp. 2d 893 (S.D. Ohio 2000). Cases that exercise supplemental jurisdiction, by contrast, downplay the issue of congressional intent and emphasize that factors such as judicial economy and efficiency strongly favor the exercise of jurisdiction over Rule 23 class actions that involve identical facts and highly similar legal theories. *See, e.g.*, *McLaughlin v. Liberty Mut. Ins. Co.*, 224 F.R.D. 304, 313 (D. Mass. 2004); *Goldman v. Radioshack Corp.*, 2003 WL 21250571, at *2-3 (E.D. Pa. Apr. 16, 2003); *Chavez v. IBP, Inc.*, 2002 WL 31662302, at *2-5 (E.D. Wash. Oct. 28, 2002); *Beltran-Benitez v. Sea Safari, LTD.*, 180 F. Supp. 2d 772, 773-74 (E.D.N.C. 2001).

While it is a close question, the court finds the latter view to be more persuasive for two reasons. First, the jurisdictional decision calculus prescribed at 28 U.S.C. § 1367(c)(4) does not permit a court to decline supplemental jurisdiction for any conceivable reason, even if that reason is "compelling" in a colloquial sense. Rather, the "compelling reasons" that may overcome supplemental jurisdiction under section 1367(c)(4) are carefully limited in

type to "those that lead a court to conclude that declining jurisdiction 'best accomodates [sic] the values of economy, convenience, fairness, and comity.'" *Executive Software N. Am. v. U.S. Dist. Court*, 24 F.3d 1545, 1557 (9th Cir. 1994) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988)). The issue of congressional intent with respect to the FLSA is not an issue of judicial economy, convenience, fairness to the parties, or federal-state comity. As a result, it may not serve as a "compelling reason" for declining supplemental jurisdiction. *Id.*; *see also Lindsay*, 448 F.3d at 425 ("We do not view the difference between the opt-in procedure provided by *section 216(b) for FLSA* claims and the opt-out procedure for state law claims provided by *Rule 23* as fitting the 'exceptional circumstances'/'other compelling reasons' language of *section 1367(c)(4)*.").

Second, the values of economy, convenience, fairness, and comity on balance favor retaining supplemental jurisdiction, rather than declining it. Defendant is likely correct that simultaneous proceedings under Rule 23 and 29 U.S.C. § 216(b) will create some confusion for litigants. Many employees who are initially told that they can only participate in the lawsuit if they opt in via section 216(b) will subsequently receive notices informing them that they are automatically part of the Rule 23 class unless they expressly opt out. However, the retention of the state-law class action would avoid the more substantial problem of duplication of much of this court's work at the state level and thereby prevent a significant waste of state judicial resources. It is also far more convenient for the parties to have all of their closely related claims resolved in one forum. The court therefore finds that supplemental jurisdiction must be exercised.

## III.    A Motion for Judgment on the Pleadings Is the Proper Procedural Device

Federal Rule of Civil Procedure 12(c) permits judgment on the pleadings after an answer to a complaint has been filed. "Judgment on the pleadings is appropriate when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989). "All allegations

1   of fact by the party opposing the motion are accepted as true, and are construed in the light

2   most favorable to that party." *Qwest Commc'ns Corp. v. City of Berkeley*, 208 F.R.D. 288,

3   291 (N.D. Cal. 2002). In determining whether judgment on the pleadings should be entered,

4   a district court may consider the allegations made in the complaint and the answer, *id.*,

5   materials attached to the complaint in accordance with Federal Rule of Civil Procedure 10(c),

6   *id.*, and any other materials that are (1) specifically referred to the in the complaint, (2)

7   central to the plaintiff's claim, *and* (3) of uncontested authenticity, *Marder v. Lopez*, 450

8   F.3d 445, 448 (9th Cir. 2006). If any other materials are to be considered, "the motion shall

9   be treated as one for summary judgment and disposed of as provided in Rule 56, and all

10  parties shall be given reasonable opportunity to present all material made pertinent to such

11  a motion by Rule 56." Fed. R. Civ. P. 12(c).

12      The notice-of-claim letter, the only evidence on which the Motion to Dismiss will be

13  decided, is not outside the pleadings. While the Complaint does not refer to the document,

14  Defendant's Answer does. The parties have therefore agreed that the Motion to Dismiss

15  under Rule 12(c) need not be converted into a motion for summary judgment under Rule 56.

16  **IV.     The Motion Under Rule 12(c) Will Be Granted**

17          **A.      Plaintiffs Failed to File a Timely Notice of Claim Under *Houser***

18      To maintain an action against a public entity or a public employee in Arizona, a

19  putative litigant must first file a claim with persons authorized to accept service for the public

20  entity or employee within 180 days of the accrual of that litigant's cause of action. A.R.S.

21  § 12-821.01(A). "The claim shall contain facts sufficient to permit the public entity or public

22  employee to understand the basis upon which liability is claimed" and include a "specific

23  amount for which the claim can be settled and the facts supporting that amount." *Id.* The

24  goal of these requirements is to ensure that claimants will "provid[e] the government entity

25  with a factual foundation to permit the entity to evaluate the amount claimed" and to ensure

26  that claimants "will not demand unfounded amounts that constitute quick unrealistic

27  exaggerated demands." *Deer Valley Unified Sch. Dist. No. 97 v. Houser*, 214 Ariz. 293, 296,

28  152 P.3d 490, 493 (2007).

1    *Houser* requires the dismissal of Plaintiffs' state-law claim.  First, Plaintiffs did not

2    indicate a "particular and certain amount" for which their claims could be settled.  *Houser*,

3    214 Ariz. at 296, 152 P.3d at 493.  The notice of claim states that Plaintiffs would settle for

4    "twenty million dollars ($20,000,000) plus attorneys fees and costs."  Doc. # 43, Exh. A at

5    2.  Obviously, $20,000,000 is on its own an unqualified and specific amount.  Yet the

6    additional demands for unspecified fees and costs introduced uncertainty into the proposed

7    settlement value.  As Defendant points out, the extent to which the settlement value of the

8    case would exceed $20,000,000 was entirely unclear from Plaintiffs' notice.  Costs could be

9    substantial and fees as a proportion of recovery might be millions of dollars.  Given this

10   uncertainty, the notice of claim failed to fulfill A.R.S. § 12-821.01(A)'s purposes of

11   "permit[ting] the possibility of settlement prior to litigation" and "assist[ing Defendant] in

12   financial planning and budgeting."  *Martineau v. Maricopa County*, 207 Ariz. 332, 335-36,

13   86 P.3d 912, 915-16 (2004).  Defendant could not make precise budgeting calculations or

14   seriously entertain the prospect of settlement without more specific information.

15       Plaintiffs press for a lenient interpretation of the "specific amount" requirement of

16   A.R.S. § 12-821.01(A) on the ground that attorney's fees and costs are difficult to predict,

17   particularly in class actions involving numerous plaintiffs.  The argument is unpersuasive.

18   Section 12-821.01(A) has been found applicable to representative class actions.  *Arena S.*

19   *Arena, Inc. v. Superior Court*, 163 Ariz. 423, 426, 788 P.2d 1174, 1177 (1990).  There is

20   therefore no basis for limiting the requirements of *Houser* to actions brought by individual

21   plaintiffs on the ground that settlement calculations are necessarily too difficult to make in

22   multi-plaintiff class actions.  Additionally, and equally significant, all offers of settlement

23   entail significant conjecture about the likely costs and benefits of litigation.  The variables

24   that factor into a thoughtful settlement offer are almost always numerous.  Section 12-

25   821.01(A) contemplates this uncertainty and nevertheless requires a "specific" settlement

26   amount.  This requirement is not burdensome.  After taking their various risks and options

27   into account, Plaintiffs simply need to state a precise and certain figure for which they are

28   *willing* to settle their entire case.  This they did not do.

1     Plaintiffs' notice of claim also failed to comply with A.R.S. § 12-821.01(A) because
2  it omitted facts supporting the amount of the proposed settlement.  There is no indication as
3  to how Plaintiffs reached the figure of $20,000,000, as opposed to any other conceivable
4  settlement value.  Defendant could not discern from the notice the extent to which the
5  $20,000,000 figure reflects back-pay liability as opposed to an anticipated award of punitive
6  damages at trial.  Nor could Defendant discern the full extent or nature of the underlying
7  violations.  Plaintiffs, for example, stated without any explanation that they "believe other
8  violations are present and result in additional back-pay liability."  Doc. # 43, Exh. A at 2.
9  The extent to which these unnamed violations factored into the $20,000,000 settlement offer
10  is unclear.

11     Plaintiffs contend that their admitted failure to notify the City of the nature of the
12  "other violations" should only render the notice inadequate with respect to the unspecified
13  claims that are based on those violations and still allow their state-law donning-and-doffing
14  claim to proceed.  However, no case authority has endorsed such a segmented approach, and
15  the purposes of A.R.S. § 12-821.01(A) are best served by a requirement of sufficient notice
16  of all claims in one letter.  A public entity's ability to assess liability, investigate claims,
17  budget for anticipated litigation, and meaningfully evaluate the merits of a proposed
18  settlement substantially relies on an awareness of all of the claims on which liability is
19  asserted.

20     The effect of these deficiencies is that Plaintiffs have still not filed a sufficient notice
21  of claim under A.R.S. § 12-821.01(A) and that their state claim is untimely.  The statute
22  requires that a sufficient notice of claim be filed within 180 days after a cause of action has
23  accrued.  *Id.*  It has been approximately a year since Plaintiffs filed their notice and thus at
24  least that long since the cause of action accrued.

25     **B.    *Houser* Applies Retroactively**

26     Plaintiffs contend that even if their notice was untimely under *Houser*, the motion to
27  dismiss should be denied because they complied with the interpretation of A.R.S. § 12-
28  821.01 that governed at the time they filed their notice, and *Houser* should not be given

retroactive effect.  The argument presents a close question, but is ultimately unpersuasive. "In actions involving purely civil matters, the law of the State of Arizona has always been that unless otherwise stated, a court opinion operates retroactively as well as prospectively." *Chevron Chem. Co. v. Superior Court*, 131 Ariz. 431, 435, 641 P.2d 1275, 1279 (1982).  This presumption of retroactivity may only be overcome in accordance with a three-part analysis that considers (1) whether the opinion "establishes a new legal principle by either overruling clear and reliable precedent or deciding an issue whose resolution was not clearly foreshadowed," (2) whether retroactive application will "further or retard operation of the rule, considering its prior history, purpose and effect," and (3) whether retroactive application "will produce substantial inequitable results." *Hawkins v. Allstate Ins. Co.*, 152 Ariz. 490, 504, 733 P.2d 1073, 1087 (1987).

Because *Houser* does not discuss the issue of retroactivity, its interpretation of A.R.S. § 12-821.01(A) presumptively carries retroactive effect.  *Chevron Chem. Co.*, 131 Ariz. at 435, 641 P.2d at 1279.  The factors identified in *Hawkins* do not overcome that presumption in the circumstances of this case.  In part, this is because the portions of *Houser* that invalidate Plaintiffs' notice of claim did not establish a new legal principle, either by overruling clear and reliable precedent or by deciding an issue whose resolution was not clearly foreshadowed.  *Id.* at 504, 733 P.2d at 1087.  No previous authority clearly held that notices containing incomplete dollar estimates are statutorily sufficient.  As *Houser* indicates, early Arizona cases in fact interpreted the predecessor to section 12-821.01(A) as requiring notice of the total settlement value of a claim.  *See State v. Brooks*, 23 Ariz. App. 463, 534 P.2d 271 (Ct. App. 1975); *Dassinger v. Oden*, 124 Ariz. 551, 606 P.2d 41 (Ct. App. 1979).  Most significant of these was *Dassinger*, which held a notice of claim inadequate because it only stated dollar values for some, rather than all, of the damages underlying the plaintiff's claim.  *Id.* at 552-53, 606 P.2d at 42-43.  *Dassinger* did not address whether dollar values pertaining to costs and attorney's fees must also be provided in a notice of claim, but neither did it or any other pre-*Houser* decision state that such expenditures may be excluded entirely

1    from the dollar value provided in the notice.  The insufficiency of Plaintiffs' notice under

2    *Houser* is in this respect consistent with the prior case authority.

3         *Brooks* and *Dassinger*, moreover, were never overruled by any cases leading up to

4    *Houser*.  In *Hollingsworth v. City of Phoenix*, 164 Ariz. 462, 793 P.2d 1129 (Ct. App. 1990),

5    a notice of claim was found sufficient even though it only offered an approximation of the

6    total settlement value of the case because it provided the public entity with "notice of the

7    nature of the claim, the general facts upon which the claim is based, a reasonable estimate

8    of what the claim is worth, and the relief sought."  164 Ariz. at 466, 793 P.2d at 1133.  The

9    effect of this decision was simply that a plaintiff could provide sufficient notice by stating

10   an approximate, but still complete or "total," settlement value for his claim.  *Id.*, 793 P.2d at

11   1132-33.  *Brooks* and *Dassinger* were distinguished as involving notices that did not place

12   total dollar values on the claims at issue.  In *Young v. City of Scottsdale*, 193 Ariz. 110, 113,

13   970 P.2d 942, 945 (Ct. App. 1998), the Arizona Court of Appeals affirmed that the holding

14   in *Hollingsworth* applied even under new language in A.R.S. § 12-821.01(A) that explicitly

15   requires a notice of claim to contain a "specific amount for which the claim can be settled."

16   193 Ariz. at 114, 970 P.2d at 946.  *Young* criticized *Dassinger* as adopting a "rigid" reading

17   of Arizona's notice-of-claim statute, but again chose not to overrule its holding that a

18   sufficient notice must state a total settlement value that reflects all of the sources of the

19   plaintiff's damages demand.  193 Ariz. at 113, 970 P.2d at 945.

20        The present application of *Houser* is also consistent with prior cases concerning the

21   extent to which a notice must describe claims and their underlying factual bases.

22   *Hollingsworth* explained that A.R.S. § 12-821.01(A) is satisfied "where a claim letter gives

23   the public entity notice of the nature of the claim" and the "general facts upon which the

24   claim is based."  164 Ariz. at 466, 793 P.2d at 1133.  *Houser*, which only addressed the

25   meaning of section 12-821.01(A)'s "specific amount" requirement, left *Hollingsworth*'s

26   interpretation of the statutory requirement concerning the factual basis of a claim untouched.

27   *See* 214 Ariz. 293, 152 P.3d at 496.  As Plaintiffs concede that their notice referenced but did

28

1  not specify "the nature of any claims other than the donning and doffing claim," Doc. # 47

2  at 8, the notice was inadequate even under the pre-*Houser* case authority.

3      The presumption of retroactivity also remains valid because *Houser* was clearly

4  foreshadowed by the plain language of A.R.S. § 12-821.01(A).  The statute requires that a

5  notice state a "specific amount for which the claim can be settled."  *Id.*  It is hard to see how

6  a proposed settlement amount can be specific in any meaningful sense when it is incomplete.

7      Finally, the presumption of retroactivity holds for *Houser* because retroactive

8  application of the case would serve the purposes of A.R.S. § 12-821.01(A), which are to

9  "allow the public entity to investigate and assess liability, . . . permit the possibility of

10  settlement prior to litigation, and . . . assist the public entity in financial planning and

11  budgeting."  *Falcon ex rel. Sandoval v. Maricopa County*, 213 Ariz. 525, 527, 144 P.3d

12  1254, 1256 (2006).  Retroactivity ensures that the City will not have to defend against a

13  claim that it lacked an ability to investigate for want of sufficient notice of supporting facts.

14  Retroactivity also prevents Plaintiffs from bringing a claim for which they did not allow the

15  City an opportunity to plan financially.

16      The court is sensitive to the third prong of the test in *Hawkins*, which examines

17  whether retroactivity "will produce substantial inequitable results."  152 Ariz. at 504, 733

18  P.2d at 1087.  Retroactive application of what is already an extremely strict rule in *Houser*

19  does carry a certain flavor of inequity.  However, that inequity is more than counterbalanced

20  by the fact that *Houser* did not overrule any clear precedent validating Plaintiffs' notice of

21  claim, by the foreshadowing of *Houser* in the plain language of section 12-821.01(A), and

22  by the purposes that animate the statute.

23  **V.  Class Certification**

24      The motion for class certification pertains only to Plaintiffs' state-law claim.  Because

25  the Motion to Dismiss will be granted with prejudice on that claim, the compatibility of the

26  proposed class with the requirements of Rule 23 need not be evaluated.

27      IT IS THEREFORE ORDERED that the Motion to Dismiss (Doc. # 43) is

28  GRANTED.

1        IT IS FURTHER ORDERED that Count II of the Second Amended Complaint (Doc.

2  # 25) is dismissed with prejudice.

3        IT IS FURTHER ORDERED that Plaintiffs' Motion to Determine that Action Proceed

4  as a Class Action (Doc. # 34) is DENIED as moot.

5        DATED this 10th day of July, 2007.

Neil V. Wake
United States District Judge

- 14 -