**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| FRED BAMONTE; JAVIER COTA; RICARDO PERINE; and other similarly situated employees,<br><br>  Plaintiffs,<br><br>vs.<br><br>CITY OF MESA,<br><br>  Defendant. | No. CV 06-1860-PHX-NVW<br><br>**ORDER**<br><br>(Not For Publication) |

Before the court is the Plaintiffs' Motion for Partial Summary Judgment (Doc. # 81); the Defendant's Motion for Summary Judgment (Doc. #82); and the associated statements of fact, memoranda of points and authorities, responses and replies. For the reasons set forth below the court finds that the Defendant is entitled to summary judgment.

**I.    Background**

The Plaintiffs are police officers employed by the City of Mesa Police Department ("MPD"). They allege that the City violated Section 7 of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, by failing to compensate them for time spent donning and doffing their uniforms and protective gear. Sworn Mesa police officers are required to maintain a "Class B" uniform which consists of the following elements: a long-sleeve uniform shirt with MPD insignia shoulder patches, a clip-on or velcro tie, a metal badge

1  and nametag, authorized trousers, socks, and authorized footwear.  In addition to their
2  attire, all officers must wear specific protective gear while on duty.  This gear includes: a
3  duty belt (or gun belt), belt "keepers," a firearm and holster, magazine cases, handcuffs
4  and handcuff case, CAP-STUN spray and holder, telescopic baton and holder, TASER
5  with holder, and a portable radio with holder.  Although MPD does not require that
6  officers wear ballistic vests, reflective vests, or ballistic helmets, they must have them
7  available at all times.
8       The parties do not agree on the amount of time required to don and doff the
9  uniform and equipment, but the Defendant concedes that each process may take at least
10 ten minutes.  Neither party disputes that Mesa police officers, with the exception of
11 SWAT, must be fully uniformed and equipped prior to and through the conclusion of
12 their shifts.  However, the City does not compensate officers for time spent outside their
13 scheduled shifts donning and doffing their uniform and gear.
14      The city does not have a policy that addresses how or where donning and doffing
15 should take place.  Although the Plaintiffs assert that they are encouraged to don and doff
16 at their station or reporting place, many MPD officers choose to do so elsewhere.  Of the
17 thirteen officers questioned in preparation for these motions, only five officers fully
18 changed at work.  The remaining officers donned and doffed, either partially or fully, at a
19 location other than the station or reporting place.  Because their shifts begin as soon as
20 they leave their residences, motorcycle officers have no choice but to fully don and doff
21 at home.
22      The Plaintiffs argue that their police uniforms and protective gear are an
23 "integrated package" which is essential to carrying out their law enforcement mission.
24 Accordingly, they claim that such donning and doffing time is compensable under the
25 FLSA.  The City argues that the officers are not entitled to compensation because their
26 uniforms are not integral and indispensable to their duties, and because they are not
27 required to don and doff their uniforms and protective gear at the police station or
28 reporting place.

- 2 -

1    The parties filed cross motions for summary judgment on the issue of the
2    Defendant's liability based upon the testimony of several representative plaintiffs.  For
3    the reasons set forth below, the court finds that the Defendant is not liable to its officers
4    under the FLSA for the time they spend donning and doffing their uniforms and
5    protective gear.

6    **II.    Standard of Review**

7    Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment
8    shall be entered if the pleadings, depositions, affidavits, answers to interrogatories, and
9    admissions on file show that there is no genuine dispute regarding the material facts of
10   the case and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P.
11   56(c) (2004); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (citations
12   omitted).  The court must evaluate a party's motion for summary judgment construing the
13   alleged facts with all reasonable inferences favoring the nonmoving party.  *Baldwin v.*
14   *Trailer Inns, Inc.*, 266 F.3d 1104, 1117 (9th Cir. 2001).

15   The party seeking summary judgment bears the initial burden of informing the
16   court of the basis for its motion and identifying those portions of the pleadings,
17   depositions, answers to interrogatories, and admissions on file, together with the
18   affidavits, if any, which it believes demonstrate the absence of any genuine issue of
19   material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citations omitted).
20   Where the moving party has met its initial burden with a properly supported motion, the
21   party opposing the motion "may not rest upon the mere allegations or denials of his
22   pleading, but . . . must set forth specific facts showing that there is a genuine issue for
23   trial."  *Anderson*, 477 U.S. at 248 (citations omitted).  Summary judgment is appropriate
24   against a party who "fails to make a showing sufficient to establish the existence of an
25   element essential to that party's case, and on which that party will bear the burden of
26   proof at trial."  *Celotex Corp.*, 477 U.S. at 322; *accord Citadel Holding Corp. v. Roven*,
27   26 F.3d 960, 964 (9th Cir. 1994).  Although the initial burden is on the movant to show
28   the absence of a genuine issue of material fact, this burden may be discharged by

1 indicating to the Court that there is an absence of evidence to support the nonmoving
2 party's claims. *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1315 (9th Cir.
3 1995).
4 To show that there are genuine issues of material fact, the nonmoving party must provide
5 sufficient evidence "such that a reasonable jury could return a verdict" in its favor under
6 the governing law. *Anderson*, 477 U.S. at 248.

7 **III.    Analysis**

8 Under the FLSA, "employers must pay employees for all hours worked." *Alvarez
9 v. IBP, Inc.*, 339 F.3d 894, 902 (9th Cir. 2003), *rev'd on other grounds*, 546 U.S. 21
10 (2005). The Supreme Court defines "work" broadly as "all physical or mental exertion
11 (whether burdensome or not ) controlled or required by the employer and pursued
12 necessarily and primarily for the benefit of the employer." *Tennessee Coal, Iron, and
13 Railroad Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944). However, under the
14 Portal to Portal Act § 4(a), employees are not entitled to compensation for activities that
15 are "preliminary" or "postliminary" to the "principal activities" required by the work they
16 are hired to perform. 29 U.S.C. § 254(a).

17 An activity is neither "preliminary" nor "postliminary" simply because it is
18 performed before or after a scheduled shift. Where such activities are "integral and
19 indispensable" to a principal activity, they become compensable principal activities in
20 their own right. *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956). However, an activity is
21 "integral and indispensable" only if it is necessary to the principal work performed and is
22 done for the benefit of the employer. *Alvarez*, 339 F.3d at 902-03.

23 The Defendant argues that its officers are not entitled to compensation for time
24 spent donning and doffing their uniforms and protective gear because they have the
25 option to don and doff at home. Under the law of this circuit, "'where the changing of
26 clothes *on the employer's premises* is required by law, by rules of the employer, or by the
27 nature of the work,' the activity may be considered integral and indispensable to the
28 principle activities." *Ballaris v. Wacker Silitronic Corp.*, 370 F.3d 901, 910 (9th Cir.

2004) (citing 29 C.F.R. § 790.8(c) n. 65).  Similarly, the Department of Labor has declared that its "longstanding position" is that the FLSA mandates compensation for donning and doffing of required gear "only when the employer or the nature of the job mandates that it take place on the employer's premises." *Wage & Hour Adv. Mem. No. 2006-2* (May 31, 2006).

"Whether an activity is excluded from hours worked under the FLSA . . . is a mixed question of law and fact.  The nature of the employees' duties is a question of fact, and the application of the FLSA to those duties is a question of law." *Ballaris*, 370 F.3d at 910 (9th Cir. 2004).

**A. The donning and doffing of police uniforms and protective gear is not compensable work under the FLSA where neither the law, the police department, nor the nature of police work mandate that officers change at the station or reporting place.**

Recently, several district courts from this circuit have addressed the specific issues presented here.  In *Martin v. City of Richmond*, 504 F. Supp. 2d 766 (N.D. Cal. 2007), the court determined that a police officer's uniform is not "integral and indispensable" to his or her principal activities because a uniform, "in and of itself, does not assist the officer in performing [police] duties." *Id.* at 774.  The court reasoned that, despite the authority that it connotes, police clothing "[does] not help catch suspects, and [it does] not protect officers from violence." *Id.*  The court determined that police protective gear, however, might be integral and indispensable to an officer's principal activities because these items "actually allow officers to carry out their law enforcement tasks." *Id.*  Nevertheless, the court concluded that "the donning and doffing of protective gear at home typically renders that activity non-compensable under the FLSA." *Id.* at 775.  Although the City of Richmond formally permitted its officers to change at home, the court denied its motion for summary judgment because it was not clear from the record whether its officers "actually [had] a meaningful opportunity to don their protective gear at home, or instead, whether that option [was] illusory." *Id.*

- 5 -

The court in *Abbe v. City of San Diego*, 2007 WL 4146696 (Nov. 9, 2007), utilized a slightly different analysis than the *Martin* court, but reached a similar conclusion. In *Abbe*, the court rejected the proposition that the relevant inquiry under the "integral and indispensable" standard was "whether the uniform itself or the safety gear itself is indispensable to the job" because "they most certainly are." *Id.* at *7. Rather, the court determined that "the relevant inquiry is whether the nature of the work requires the donning and doffing *process* to be done on the employer's premises." *Id.* The court granted summary judgment to the defendant because it found no evidence that its officers were required by law, policy, or the nature of their work to don and doff their uniform or safety equipment at work. *Id.*

In contrast, the court in *Lemmon v. City of San Leandro*, ___ F. Supp. 2d ___, 2007 WL 4326743 (Dec. 7, 2007), concluded that police officers are entitled to compensation for the time they spent donning and doffing their uniforms and protective gear. Unlike in *Martin*, the *Lemmon* court found that police uniforms themselves form part of an officer's equipment because they are part of a "continuum of force." *Id.* at *4. The court then reasoned that, "unlike practically any other profession," the police uniform is necessary to the principal work performed and, therefore, there is "no distinction" between an officer's clothes and his or her protective gear. *Id.* Despite evidence that the plaintiffs had the option to change at home, the *Lemmon* court concluded that the fact that "most" officers used lockers at the police station to don and doff was a "strong indicia" that such practice was a "*de facto*"requirement. *Id.* at *5; *see also Maciel v. City of Los Angeles*, ___ F. Supp. 2d ___, 2008 WL 833963, at *8 (C.D. Cal. Mar. 21, 2008) (finding that "for all practical purposes" police equipment had to be donned and doffed at the station). Finally, the court ruled that even if the officers were actually given the option to change at home, there is no explicit requirement that there be "a location limitation [in] the analysis for finding compensability under the FLSA." *Lemmon*, 2007 WL 4326743 at *6.

- 6 -

1  The court disagrees with the reasoning in *Lemmon*, but is persuaded by the
2  analyses offered in *Martin* and *Abbe*. The court views these opinions as being in line
3  with Ninth Circuit precedent which states that an employee must be compensated for
4  donning and doffing which by law, policy of the employer, or nature or the work must
5  occur on the employer's premises. *See Ballaris*, 370 F.3d at 910; *Alvarez*, 339 F.3d at
6  903. Although the *Ballaris* and *Alvarez* courts did not explicitly preclude donning and
7  doffing which an employee could perform at home from the definition of compensable
8  work, they did put great emphasis on the fact that the activities which they found to be
9  compensable could only be performed at work.

10  Moreover, a rule which categorically defines donning and doffing time as non-
11  compensable when an employee has an opportunity to change at home is consistent with
12  the Department of Labor's "longstanding" interpretation of the FLSA. *See Wage & Hour
13  Adv. Mem. No.* 2006-2 (May 31, 2006). Although an agency's advisory memorandum is
14  not entitled to *Chevron* deference, it is "entitled to great weight as part of 'a body of
15  experience and informed judgment.'" *Wirtz v. Wester Compress Co.*, 330 F.2d 19, 24 (9th
16  Cir. 1964). Therefore, a police department need not compensate its officers for time spent
17  donning and doffing their uniforms and protective gear where neither the law, the policy
18  of the department, nor the nature of police work mandate that an officer perform these
19  activities at the station or reporting place.

20  The court agrees with *Abbe's* conclusion that the relevant inquiry is not whether
21  the Plaintiffs' uniforms or protective gear are necessary or integral to the performance of
22  their duties, but rather whether the nature of their work requires the donning and doffing
23  process to be done at the station or reporting place. Therefore, the court need not analyze
24  which pieces of uniform or gear are "necessary" for police work. Nevertheless, the court
25  is not convinced that there is anything unique about a police uniform in and of itself,
26  which assists an officer in completing his or her work. Although a police uniform
27  connotes a position of authority and alerts the public to the wearer's identity, it is
28

necessary to the performance of an officer's duties only in the insufficient sense that uniforms identify many types of workers.

### B. The donning and doffing of MPD uniforms and protective gear are preliminary and postliminary activities because the Plaintiffs have not established that the nature of their work prevents them from changing at home.

The Plaintiffs acknowledge that neither the law nor MPD policy mandate that they don and doff their uniforms and protective gear at the station or reporting place. Instead, they argue that the donning and doffing is compensable because the nature of police work requires that they change at the station. However, they fail to present evidence from which a reasonable jury could rule in their favor.

The Plaintiffs' argument that the nature of their work does not allow them to don and doff at home is based primarily on concerns that their equipment is dangerous and that commuting in uniform unnecessarily increases health and safety risks. These concerns include: the possibility that officers might be targeted by members of the public while off-duty, but in uniform; the danger that their families could be exposed to biohazardous substances which might contaminate their uniforms; the inherent danger of police equipment, including firearms; and the potential that the public might expect them to take off-duty police action without access to all of their tools.

The evidence the Plaintiffs offer in support of these concerns is insufficient for several reasons. First, the Defendant has established that each of the "risks" the Plaintiffs cite can be easily and effectively mitigated. For example, officers are encouraged to cover up their uniform with other clothing when not on duty so that the public cannot identify them as police personnel. Several MPD officers testified that they have large shirts such as baseball jerseys which they use solely for this purpose. In addition, if exposed to biohazards officers need not risk exposing their families because the City permits them to leave their uniforms with MPD for cleaning. Finally, the Defendant also notes that any dangerous equipment that an officer chooses to take home can be stored easily in a secure locker or lockbox. Although the Plaintiffs argue that these preventative

- 8 -

measures might not be 100% effective, they do not substantiate their claims with reference to any incident wherein an officer took such mitigating action and was nonetheless placed in danger.

Next, the record shows that at least some MPD officers actually do don and doff their uniforms and protective gear at home. Of the thirteen officers who offered testimony in preparation for this motion, only five testified that they always fully change into their uniforms and gear at work. Of the other eight officers roughly half donned and doffed completely at home and half split the process between home and the station. The court views this as evidence that the officers option to change at home is not, as the Plaintiffs suggest, merely illusory.

Finally, the fact that motorcycle officers must always don and doff at home also undermines the Plaintiffs' argument that the nature of police work requires that they change at the station. The Plaintiffs assert that motorcycle officers are "not an appropriate comparison group" because their shift begins as soon as they leave home, but the health and safety concerns which the Plaintiffs associate with donning and doffing at home apply universally to all patrol officers. There is no evidence suggesting that motorcycle officers are unable to safely store dangerous equipment at home or that they are unable to effectively protect their families from biohazard contamination using the department's laundry service. Moreover, the potential of retaliation does not prevent motorcycle officers from changing at home even though an ill-minded member of the public could easily follow an officer to his or her residence. Therefore, the court finds no meaningful reason why the nature of police work would allow a motorcycle officer to safely don and doff his uniform and protective gear at home, but prevent any other officer from doing so as well.

The Plaintiffs also offer other, secondary reasons why they cannot change at home. These include: fear that their equipment will damage the upholstery in their personal vehicles, a desire to exercise before or after a scheduled shift, to avoid back problems from wearing heavy gear for prolonged periods following their shifts, and the inability to

1  fasten a safety belt when traveling by car. First, the court is skeptical that the Plaintiffs'
2  protective gear prevents them from using a car's safety belt. If this were true, then all
3  officers would be required to travel without the benefit of legally mandated safety
4  restraints during their shifts. Second, these concerns are based on the nature of the
5  Plaintiffs' equipment and personal convenience, not the nature of their work. As the
6  *Abbe* court noted, "if employees have the option and the ability to change into their
7  required gear at home, changing into that gear [at work] for their own convenience simply
8  does not make that activity a principal activity." *Abbe*, 2007 WL 4146696, *6.

9  Because the Plaintiffs have failed to establish the presence of a genuine issue of
10 material fact concerning the nature of their duties, the court concludes that they have both
11 the option and the ability to don and doff their uniforms and protective gear at home.
12 Consequently, such donning and doffing are preliminary and postliminary activities
13 respectively, the performance of which does not require compensation.

14 The parties have stipulated in open court that the individual Plaintiffs who are the
15 subjects of these motions for summary judgment are representative of all the Plaintiffs.
16 They agree that a ruling in favor of the Defendant on these motions entitles Defendant to
17 summary judgment against all Plaintiffs, subject to appellate review.

18 IT IS THEREFORE ORDERED that the Defendant's Motion for Summary
19 Judgment (Doc. # 82) is GRANTED and that the Plaintiffs' Motion for Partial Summary
20 Judgment (Doc. # 81) is DENIED.

21 IT IS FURTHER ORDERED that the Clerk enter judgment in favor of Defendant
22 and that all Plaintiffs take nothing. The Clerk shall terminate this action.

23 DATED this 14th day of April, 2008.

_____
Neil V. Wake
United States District Judge

fasten a safety belt when traveling by car. First, the court is skeptical that the Plaintiffs' protective gear prevents them from using a car's safety belt. If this were true, then all officers would be required to travel without the benefit of legally mandated safety restraints during their shifts. Second, these concerns are based on the nature of the Plaintiffs' equipment and personal convenience, not the nature of their work. As the *Abbe* court noted, "if employees have the option and the ability to change into their required gear at home, changing into that gear [at work] for their own convenience simply does not make that activity a principal activity." *Abbe*, 2007 WL 4146696, *6.

Because the Plaintiffs have failed to establish the presence of a genuine issue of material fact concerning the nature of their duties, the court concludes that they have both the option and the ability to don and doff their uniforms and protective gear at home. Consequently, such donning and doffing are preliminary and postliminary activities respectively, the performance of which does not require compensation.

The parties have stipulated in open court that the individual Plaintiffs who are the subjects of these motions for summary judgment are representative of all the Plaintiffs. They agree that a ruling in favor of the Defendant on these motions entitles Defendant to summary judgment against all Plaintiffs, subject to appellate review.

IT IS THEREFORE ORDERED that the Defendant's Motion for Summary Judgment (Doc. # 82) is GRANTED and that the Plaintiffs' Motion for Partial Summary Judgment (Doc. # 81) is DENIED.

IT IS FURTHER ORDERED that the Clerk enter judgment in favor of Defendant and that all Plaintiffs take nothing. The Clerk shall terminate this action.

DATED this 14th day of April, 2008.

_____
Neil V. Wake
United States District Judge